UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GLORIA FUNTANILLA,

               Plaintiff,

        v.

SWEDISH HOSPITAL HEALTH
SERVICES, et al.,

               Defendants.

CASE NO. C09-1226JLR

ORDER DENYING MOTION
FOR APPOINTMENT OF
COUNSEL AND GRANTING
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the court on Plaintiff Gloria Funtanilla's motion for

court-appointed counsel (Dkt. # 42) and Defendant Swedish Hospital Health Services'

("Swedish") motion for summary judgment (Dkt. # 36).  Having considered the

submissions of the parties, the balance of the record, and the relevant law, the court

DENIES Ms. Funtanilla's motion for court-appointed counsel (Dkt. # 42) and GRANTS

Swedish's motion for summary judgment (Dkt. # 36).

# I.   BACKGROUND

On August 28, 2009, Ms. Funtanilla, who is proceeding pro se, filed a proposed complaint and a motion to proceed *in forma pauperis* ("IFP").  (Dkt. # 1.)  In her complaint, she alleged that she was disabled, that Swedish refused to accommodate her disability, and that she was laid off from her job as an environmental engineer on the basis of her disability.  (*Id.* Ex. 1 ¶¶ 7-11.)  She further alleged that Swedish's and Defendant SEIU Local 1199's  ("SEIU") conduct reflected "an evil motive or reckless indifference to [her] rights, feelings, and entitlement to employment without discrimination because of disability, race, national origin and age."  (*Id.* ¶ 14.)  The court granted Ms. Funtanilla's motion to proceed IFP.  (Dkt. # 4.)  Shortly thereafter, the court entered its standard order regarding initial disclosures, joint status report, and early settlement, which set November 24, 2009, as the deadline for the parties to file a joint status report pursuant to Federal Rule of Civil Procedure 26(f).  (Dkt. # 6.)

On November 24, 2009, Swedish filed a motion for an extension of time to file the joint status report because it had not yet been served with a summons and complaint.  (Dkt. # 8.)  The court granted the motion, directed Ms. Funtanilla to file proof of service by January 4, 2010, and set the new joint status report deadline on January 18, 2010.  (Dkt. # 9 ("Service Order").)

On January 11, 2010, Swedish filed a motion to dismiss on the ground that Ms. Funtanilla had not served Defendants within the 120 days specified by the Federal Rules of Civil Procedure.  (Dkt. # 11.)  On January 15, 2010, Ms. Funtanilla filed an amended complaint, in which she (1) alleged that Defendants discriminated against her on the basis

1  of race, color, national origin, and age, and (2) added a claim against SEIU for breach of

2  the duty of fair representation.  (Am. Compl. (Dkt. # 13) at 2; *id.* ¶¶ 17-19.)  Ms.

3  Funtanilla did not, however, respond to Swedish's motion to dismiss, file proof of

4  service, or otherwise respond to the court's Service Order.

5      On February 11, 2010, the court granted Swedish's motion to dismiss for failure of

6  service.  (Dismissal Order (Dkt. # 15).)  One week later, Ms. Funtanilla filed a motion for

7  reconsideration.  (Dkt. # 18.)  In her motion, Ms. Funtanilla contended that she had

8  attempted to serve Defendants and that she had not received the motion to dismiss or the

9  court's prior orders.  (*Id.*)  On March 25, 2010, the court granted the motion for

10  reconsideration and reopened this action.  (Dkt. # 25.)  The court directed the clerk to

11  send waivers of service of summons to Defendants pursuant to its authority under Federal

12  Rule of Civil Procedure 4(c)(3).  (*Id.*)  The court also advised Ms. Funtanilla that pro se

13  litigants are required to follow the Federal Rules of Civil Procedure and the Local Rules

14  for the Western District of Washington.  (*Id.*)

15      On March 27, 2010, Ms. Funtanilla and her husband, Sixto Funtanilla, filed a joint

16  voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the

17  Western District of Washington.  (West Decl. (Dkt. # 37) Ex. A.)  Although Ms.

18  Funtanilla is proceeding pro se in the instant action, she and her husband were

19  represented by counsel when they filed their bankruptcy petition.  (*See id.* at 3, 35.)

20      Two items in the bankruptcy petition required the Funtanillas to disclose the

21  existence of any potential lawsuits or pending litigation.  First, Schedule B, Line 21

22  requires the debtor to list "[c]ontingent and unliquidated claims of every nature, including

1  tax refunds, counterclaims of the debtor, and rights to setoff claims." (*Id.* at 12.)  Second,

2  paragraph 4 of the Statement of Financial Affairs requires the debtor to list "all suits and

3  all administrative proceedings to which the debtor is or was a party within one year

4  immediately preceding the filing of this bankruptcy case." (*Id.* at 27.)  Nevertheless, the

5  Funtanillas did not disclose this lawsuit or their claims against Swedish and SEIU in their

6  petition.  Rather, the Funtanillas checked "none" for both items (*id.* at 12, 27), and

7  declared under penalty of perjury that their responses were true and correct (*id.* at 25, 33).

8  On July 7, 2010, the bankruptcy court granted the Funtanillas a discharge.  (West Decl.

9  Ex. B.)

10  In the meantime, Ms. Funtanilla continued to pursue this action.  For example, on

11  June 25, 2010, she participated in a telephone conference with counsel for Defendants;

12  and on October 29, 2010, she provided responses to Swedish's written discovery

13  requests.  (West Decl. ¶¶ 4, 5.)

14  On November 8, 2010, Swedish filed the instant motion for summary judgment.

15  Although her response was due on November 29, 2010, *see* Local Rules W.D. Wash. CR

16  7(d)(3), Ms. Funtanilla filed nothing with the court.  On December 2, 2010, Swedish filed

17  a supplemental memorandum along with proof that Ms. Funtanilla had been personally

18  served with the motion for summary judgment.  (Supp. Mem. (Dkt. # 38) at 6.)  Although

19  the court may take a nonmovant's failure to respond as an admission that the motion has

20  merit, *see* Local Rules W.D. Wash. CR 7(b)(2), the court, recognizing Ms. Funtanilla's

21  pro se status, nevertheless set oral argument on December 16, 2010, in order to allow Ms.

22  Funtanilla an opportunity to address Swedish's motion.

On the morning of argument, Swedish filed a supplemental declaration in support of its motion for summary judgment.  (2d West Decl. (Dkt. # 39).)  Swedish attached the City of Seattle Office of Civil Rights' ("SOCR") Findings of Fact and Determination regarding its investigation of Ms. Funtanilla's charges of discrimination against Swedish.[1]  (*Id.* Ex. A.)  SOCR summarized Ms. Funtanilla's claim as alleging that Swedish "engaged in unfair employment practices with respect to failure to accommodate and hostile work environment due to disability and race" in violation of the Seattle Municipal Code and Title VII of the Civil Rights Act of 1964.  (*Id.* at 3.)  SOCR found that "no reasonable cause exists to believe that an unfair practice has occurred with respect to the charge filed in this matter."  (*Id.* at 2; *see also id.* at 8.)  On January 20, 2010, the Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights adopting SOCR's findings, closing its file, and advising Ms. Funtanilla of her right to file suit.  (*Id.* Ex. B.)

Less than an hour before argument, Ms. Funtanilla submitted a reply to Swedish's supplemental memorandum (Dkt. # 41) and a motion for court-appointed counsel (Dkt. # 42).  In her reply, Ms. Funtanilla stated that she had served Swedish with "the original response to the motion for summary judgment in the form of the EEOC 'to sue' letter" and that she "asserts and relies on the findings of the EEOC to establish good cause and merits."  (Reply ¶¶ 1, 2.)  As the court noted above, however, the EEOC adopted SOCR's

---

[1] Ms. Funtanilla's charge to the SOCR did not address her claims against SEIU.

1   determination that there was no reasonable cause to believe that an unfair practice was

2   committed.  (2d West Decl. Exs. A, B.)

3                                   **II.   ANALYSIS**

4   **A.   Appointment of Counsel**

5          A plaintiff has no constitutional right to appointed counsel for employment

6   discrimination claims.  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 269 (9th

7   Cir. 1982).  In actions brought under Title VII and the Americans with Disability Act,

8   however, the court has authority to appoint counsel pursuant to 42 U.S.C. §§ 2000e-

9   5(f)(1) and 12117(a).[2]  Courts evaluate three factors in reviewing an application for

10  appointment of counsel: "(1) the plaintiff's financial resources; (2) the efforts made by

11  the plaintiff to secure counsel on his or her own; and (3) the merit of the plaintiff's

12  claim."  *Johnson v. U.S. Dep't of Treasury*, 939 F.2d 820, 824 (9th Cir. 1991).  A district

13  court's decision whether to appoint counsel is reviewed for abuse of discretion.  *Id.*  The

14  Ninth Circuit has held that a district court abuses its discretion if it fails to rule on a

15  plaintiff's motion for appointment of counsel before granting a defendant's motion that

16  would dispose of the case.  *Id.* (citing *Miles v. Dep't of the Army*, 881 F.2d 777, 784 (9th

17  Cir. 1989) (district court abused its discretion in granting a motion to dismiss for lack of

18

19

20          [2] Section 2000e-5(f)(1) provides, in relevant part, that "[u]pon application by the
complainant and in such circumstances as the court may deem just, the court may appoint an
attorney for such complainant and may authorize the commencement of the action without the

21  payment of fees, costs, or security."  42 U.S.C. § 2000e-5(f)(1).  Section 12117(a) provides that
"the powers, remedies, and procedures set forth in section[] . . . 2000e-5 . . . shall be the powers,
remedies, and procedures this subchapter provides . . . to any person alleging discrimination on

22  the basis of disability in violation of any provision of this chapter . . . ."  42 U.S.C. § 12117(a).

1    subject matter jurisdiction before considering the plaintiff's motion for appointment of

2    counsel, which he had filed with his complaint)).  "In such a case, the district court

3    should determine if counsel would aid its resolution before disposing of the case on its

4    merits."  *Id.*  At the same time, however, the Ninth Circuit has recognized that the filing

5    of a motion for appointment of counsel does not shield a plaintiff from sanctions unless

6    the plaintiff's actions are reasonably attributable to the lack of counsel.  *Id.* at 825.  The

7    court reasoned that, "while counsel may be able to conduct an investigation, conduct

8    direct and cross-examination, and argue difficult legal issues, counsel cannot undo the

9    plaintiff's improprieties."  *Id.*

10           Here, there is no dispute that Ms. Funtanilla lacks sufficient financial resources to

11   hire counsel, as she is proceeding IFP in this action.  Further, Ms. Funtanilla represents

12   that she has attempted to obtain a pro bono attorney through the Washington State Bar

13   Association and King County Bar Association and asked several lawyers if they would

14   take her case on contingency.  (Mot. for Counsel at 2.)  As explained below, however,

15   Ms. Funtanilla cannot prevail on her claims against Swedish and SEIU because she is

16   judicially estopped from asserting those claims due to her failure to disclose them to the

17   bankruptcy court.  Although *Johnson* involved the imposition of sanctions for a

18   plaintiff's failure to prosecute, the court finds that the principles set forth by the *Johnson*

19   court apply here.  Ms. Funtanilla's failure to disclose her claims in her bankruptcy action,

20   in which she was represented by counsel, cannot be reasonably attributed to her lack of

21   counsel in this action.  *See Johnson*, 939 F.2d at 825.  Because appointment of counsel

22

1    now would not aid the court in its resolution of Swedish's motion, *id.* at 824, the court

2    denies Ms. Funtanilla's motion for court-appointed counsel.

3    **B.    Judicial Estoppel**

4            "Judicial estoppel is an equitable doctrine that precludes a party from gaining an

5    advantage by asserting one position, and then later seeking an advantage by taking a

6    clearly inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778,

7    782 (9th Cir. 2001) (citations omitted).  Courts consider whether to apply judicial

8    estoppel based on whether the party to be estopped takes a position that is "clearly

9    inconsistent" with a prior position, succeeded in persuading a court to accept the prior

10   position, and would "derive an unfair advantage or impose an unfair detriment on the

11   opposing party if not estopped."  *New Hampshire v. Maine,* 532 U.S. 742, 750-751

12   (2001).

13           In the bankruptcy context, "a party is judicially estopped from asserting a cause of

14   action not raised in a reorganization plan or otherwise mentioned in the debtor's

15   schedules or disclosure statements."  *Hamilton,* 270 F.3d at 783 (citing cases so holding).

16   Judicial estoppel is appropriate "when the debtor has knowledge of enough facts to know

17   that a potential cause of action exists during the pendency of the bankruptcy, but fails to

18   amend his schedules or disclosure statements to identify the cause of action as a

19   contingent asset."  *Id.* at 784.  Courts reason that "the integrity of the bankruptcy system

20   depends on full and honest disclosure by debtors of all of their assets."  *Id.* at 785

21   (citation omitted).  Courts have, therefore, imposed judicial estoppel even where a

22   discharge is later vacated, *id.* at 784, and even where the debtor has offered to reopen his

1   or her bankruptcy case and amend his or her petition, *id.  See also Laisure-Radke v. Barr*

2   *Labs., Inc.*, No. C03-3654RSM, 2006 WL 1727978 (W.D. Wash. June 22, 2006), *aff'd*,

3   313 F. App'x 32 (9th Cir. 2009).

> The rationale for . . . decisions [invoking judicial estoppel to prevent a party
> who failed to disclose a claim in bankruptcy proceedings from asserting
> that claim after emerging from bankruptcy] is that the *integrity of the
> bankruptcy system depends on full and honest disclosure by debtors of all
> of their assets.* The courts will not permit a debtor to obtain relief from the
> bankruptcy court by representing that no claims exist and then subsequently
> to assert those claims for his own benefit in a separate proceeding. *The
> interests of both the creditors, who plan their actions in the bankruptcy
> proceeding on the basis of information supplied in the disclosure
> statements, and the bankruptcy court, which must decide whether to
> approve the plan of reorganization on the same basis, are impaired when
> the disclosure provided by the debtor is incomplete.*

10  *Hamilton*, 270 F.3d at 785 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir.

11  1999)) (alteration and emphasis in original).[3]

12      Because Ms. Funtanilla failed to disclose her claims against Swedish and SEIU in

13  her bankruptcy petition, judicial estoppel bars her from pursuing those claims in this

14  court. *Id.* at 783.  First, there is no dispute that Ms. Funtanilla asserted inconsistent

15  positions in the two proceedings: although she had been actively pursuing her claims in

16  this court for months before she filed for bankruptcy, she told the bankruptcy court that

17

18      _____

19      [3] The Ninth Circuit has held, outside of the bankruptcy context, that "[i]f incompatible
    positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does
20  not apply." *Johnson v. Or. Dep't of Human Res., Rehab. Div.*, 141 F.3d 1361, 1369 (9th Cir.
    1998) (citations omitted).  In the bankruptcy context, however, the Ninth Circuit has not
21  recognized an exception for inadvertence or mistake.  Rather, the debtor's failure to disclose, on
    its own, gives rise to judicial estoppel.  *Hamilton*, 279 F.3d at 783 (holding, three years after
22  *Johnson*, that "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause
    of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or
    disclosure statements.").

1  she had no contingent claims and was not a party to any suit within one year of filing her

2  petition.  Second, the bankruptcy court adopted Ms. Funtanilla's position that she had no

3  contingent claims or pending litigation when it granted the Funtanillas a discharge.

4  Third, Ms. Funtanilla derived an unfair advantage by not disclosing her claims in her

5  bankruptcy petition.  Concealing this action enabled the Funtanillas to obtain a discharge

6  shortly after filing for bankruptcy and placed Ms. Funtanilla in a position to reap a

7  windfall if she were to recover for her concealed claims in this court.  As courts have

8  noted, "such a result would permit debtors to 'conceal their claims; get rid of their

9  creditors on the cheap; and start over with a bundle of rights.'"  *In re Superior*

10  *Crewboats, Inc.*, 374 F.3d 330, 336 (5th Cir. 2004) (quoting *Payless Wholesale Distrib.,*

11  *Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993)) (internal edits

12  omitted).  For these reasons, the court grants Swedish's motion for summary judgment on

13  the basis of judicial estoppel. [4]

14                              **III.    CONCLUSION**

15       For the foregoing reasons, the court DENIES Ms. Funtanilla's motion for court-

16  appointed counsel (Dkt. # 42) and GRANTS Swedish's motion for summary judgment

17  (Dkt. # 36).

18  _____

19

20  [4] Even if an exception for inadvertence or mistake applied in the bankruptcy context, Ms.
Funtanilla's nondisclosure was not inadvertent.  The Fifth Circuit has held that a "debtor's
failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor

21  either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." *In re
Coastal Plains*, 179 F.3d at 210.  Ms. Funtanilla had knowledge her of her claims: in fact, she
continued to pursue them in this court while her bankruptcy petition was pending.  In addition,

22  she had motive to conceal the claims in order to obtain a discharge.

1    Dated this 10th day of January, 2011.

2

3

4                                          _____
                                           JAMES L. ROBART
5                                          United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 11